UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| KEVIN L. BAIRD, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-2000-B |
| | § | |
| OTGONBAATAR SHAGDARSUREN | § | |
| & DBN CARRIER, INC., | § | |
| | § | |
| Defendants, | § | |
| | § | |
| ALLIED PREMIER INSURANCE & | § | |
| R&Q SOLUTIONS, LLC, | § | |
| | § | |
| Third-Party Defendants. | § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Third-Party Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 82). For the reasons that follow, the Court **GRANTS** the motion and **DISMISSES** without prejudice all claims against Third-Party Defendants Allied Premier Insurance and R&Q Solutions, LLC.

## I.

## BACKGROUND[1]

This dispute concerns insurance coverage for an automobile accident. *See* Doc. 73, DBN Carrier, Inc.'s First Am. Compl., ¶¶ 4.1–4.4. Plaintiff in the underlying lawsuit, Kevin Baird, collided

---

[1] The Court derives its factual account from the allegations contained in Defendant DBN Carrier Inc.'s First Amended Original Complaint (Doc. 73). *See D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985).

- 1 -

with Defendant Otgonbaatar Shagdarsuren, who was hauling a trailer for Defendant DBN Carrier, Inc. *Id.* ¶¶ 4.1, 4.3. This collision occurred in Dallas County, Texas. *Id.* ¶ 4.1. At the time of the accident, Defendant DBN had an automobile insurance policy from Third-Party Defendant Allied Premier Insurance. *Id.* ¶ 4.2. This policy, DBN alleges, covers "all vehicles used by DBN in conducting any service for which a motor carrier permit is required whether or not the vehicle was listed in the insurance policy." *Id.* ¶ 4.2. Accordingly, when Plaintiff Baird sued Defendants Shagdarsuren and DBN after the accident, DBN gave Allied notice of the lawsuit. *Id.* ¶ 4.4.

But Allied denied coverage, leading DBN to name Allied a Third-Party Defendant in the lawsuit,[2] seeking a declaratory judgment regarding the policy's coverage for the accident. *Id.* ¶¶ 4.4–5.4.[3] Specifically, Defendant DBN seeks a declaratory judgment that: (1) Defendant Shagdarsuren's vehicle was entitled to primary coverage under the insurance policy; (2) DBN is entitled to indemnity from Allied under the policy; and (3) Allied is obligated to defend DBN in the underlying lawsuit. *Id.* ¶¶ 5.2, 5.3. In response, Allied filed a motion to dismiss, contending that this Court lacks personal jurisdiction over Allied. Doc. 82, Third-Party Defs.' Mot. to Dismiss, 1. DBN thereafter responded (Doc. 85), and Allied replied (Doc. 87). Thus, this motion is now ripe for review.

---

[2] Allied Premier Insurance, DBN alleges, is no longer operating—"all business operations have been transferred to" R&Q Solutions, LLC. *Id.* ¶ 1.3. Thus, DBN also names R&Q as a Third-Party Defendant. *See id.* ¶1.2. Given that the parties address the Third-Party Defendants collectively, see Doc. 82, Third-Party Defs.' Mot.to Dismiss, 4, Doc. 85, DBN's Br.in Resp., 2, this Court will do the same. Thus, the Court refers to both Third-Party Defendants as "Allied."

[3] DBN also brings a breach-of-contract claim against Allied. *See id.* ¶¶ 5.5–5.7.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows for the dismissal of an action in which the court lacks personal jurisdiction over the defendant. A federal court may assert jurisdiction over a nonresident defendant in a diversity suit if the state's long-arm statute applies and due process is satisfied under the Fourteenth Amendment to the United States Constitution. *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989). Texas courts have interpreted the Texas long-arm statute as "extending to the limits of due process." *Bullion v. Gillespie*, 895 F.2d 213, 215 (5th Cir.1990). Accordingly, to determine whether it may assert jurisdiction under the Texas long-arm statute, a federal court must determine whether jurisdiction comports with federal constitutional guarantees of due process. *Id.* at 216.

"The due process clause of the Fourteenth Amendment, as interpreted by the Supreme Court, permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has established 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Both prongs of the due process test must be met" for the Court to exercise personal jurisdiction over a defendant. *See id.*

A nonresident defendant's minimum contacts may either support an assertion of "specific" or "general" jurisdiction. *WNS Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir.1989). A court may exercise "specific" jurisdiction when a cause of action arises out of a defendant's purposeful contacts with the forum. *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361–62 (5th Cir.1990). Alternatively,

a court is said to have "general jurisdiction" when a defendant has engaged in continuous and systematic contacts with the forum. *Id.*

The party seeking to invoke federal jurisdiction bears the burden of establishing the requisite minimum contacts. *WNS*, 884 F.2d at 203. Further, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *D.J. Invs.*, 754 F.2d at 546 (citations omitted).

## III.

## ANALYSIS

A.   *Personal Jurisdiction*

   1.   <u>Specific Personal Jurisdiction over Allied[4]</u>

Allied claims that it is not subject to specific jurisdiction, pointing out that its "only tie to Texas is the fortuitous result that a driver for DBN was involved in an automobile accident while driving through Dallas County, Texas." Doc. 82, Third-Party Defs.' Mot. to Dismiss, 2, 7. To support this contention, Allied points to other federal district courts that "have declined to exercise specific personal jurisdiction over nonresident defendants in similar situations." *Id.* at 8–9 (citing *Air Tropiques, Sprl v. N. & W. Ins. Co.*, 2014 WL 1323046 (S.D. Tex. Mar. 31, 2014) and *Satterfield v. Gov. Emps. Ins. Co.*, 287 F. Supp. 3d 1285 (W.D. Okla. 2018)).

---

[4] DBN does not allege facts suggesting that the Court has general personal jurisdiction; rather, with respect to general personal jurisdiction, DBN only requests jurisdictional discovery. *See* Doc. 85, DBN's Br. in Resp., 5–17. Accordingly, in this section, the Court addresses only those arguments pertaining to specific personal jurisdiction.

Further, Allied directs the Court to cases "involving a nonresident entity with comparable or more substantial jurisdictional ties to the forum" in which the Fifth Circuit has found no specific jurisdiction over the entity. *Id.* at 9 (citing *Perez v. Pan. Am. Life Ins. Co.*, 1996 WL 511748 (5th Cir. 1996) (unpublished); *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364 (5th Cir. 2010); *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327 (5th Cir. 2004)). Specifically, Allied notes that in *Perez*, the Fifth Circuit found no personal jurisdiction where the defendant–insurer's only potential contacts with Texas, the forum state, were "the worldwide coverage language in the [insurance] policy itself and" the plaintiffs' claim that the defendant–insurer's representative approved treatment in Texas. *Id.* (citing *Perez*, 1996 WL 511748, at *2).

Moreover, Allied reiterates that the only claims asserted against it pertain to coverage under an insurance policy that "was negotiated, drafted, and executed in California." *Id.* at 10. Because DBN's claims against Allied, which pertain to coverage under the policy, "do not concern any facts or conduct that occurred in Texas," Allied urges the Court to deny the exercise of personal jurisdiction. *Id.*

In response, DBN notes that this Court must accept DBN's allegations—that Allied is obligated, under the terms of the insurance policy, to indemnify DBN and defend DBN in its lawsuit against Baird—as true, given that "they have not been contradicted by any competent evidence from Allied." Doc. 85, DBN's Br. in Resp., 5 (citation omitted).

Further, Allied's alleged agreement "to indemnify and defend DBN" if it were sued in Texas for personal injuries relating to its trucking business, DBN contends, establishes minimum contacts for purposes of personal jurisdiction. *Id.* at 6, 10 (citing Doc. 86, DBN's App., Ex. C, 55). Specifically,

DBN alleges that the insurance policy at issue "provides coverage within a specified territory"—"The United States of America." *Id.* at 2 (quotation marks omitted) (quoting Doc. 86, DBN's App., Ex. C, 55). Additionally, DBN points out that its trucking business consisted of shipping cars across the United States. *Id.* at 10. Under these circumstances, DBN concludes that when Allied contracted with DBN, it "clearly contemplated that an accident might occur in any state where DBN was shipping automobiles . . . ." *Id.* at 11. Thus, DBN urges the court to find minimum contacts by Allied with the state of Texas. *Id.*

DBN relies upon *Leech v. National Interstate Insurance Company*, 2018 WL 3737926 (S.D. Ind. Aug. 7, 2018), where the Southern District of Indiana district court found that a defendant–insurer had minimum contacts with the forum state based on its obligation to provide indemnity and a defense to any lawsuit in the United States. Doc. 85, DBN's Br. in Resp., 6–7 (citing *Leech*, 2018 WL 3737926, at *7). The district court also, according to DBN, found that the exercise of personal jurisdiction was fair, given "the close connection of the insurance dispute to the underlying tort case . . . ." *Id.* at 8.[5]

Further, DBN seeks to distinguish, among other cases, *Perez. Id.* at 12 (citing 1996 WL 511748). DBN points out that *Perez* was a dispute over medical-insurance coverage. *Id.* (citing Perez, 1996 WL 511748, at *1). Moreover, according to DBN, *Perez* does not control because "[t]he only Texas connection in that case is that some of the medical treatment took place in Houston," and it did not involve a insurer's duty to defend in the forum state or pay insurance money related to a tort in the forum state. *See id.* at 12–13.

---

[5] DBN further mentions other cases in which the D.C., Fourth, Eighth, Ninth, and Eleventh Circuits have upheld personal jurisdiction over an insurer. *Id.* at 7–8 (citations omitted).

In reply, Allied contends that this Court has found a worldwide insurance coverage provision insufficient to confer specific personal jurisdiction, and a nationwide provision is "no different." Doc. 87, Third-Party Defs.' Reply Br., 3. Specifically, Allied relies upon *Lillie v. Stanford Trust Company*, 2015 WL 13741930 (N.D. Tex. Apr. 7, 2015), where the district court explained that "relying on a 'worldwide' coverage provision to create specific jurisdiction relies on 'unpredictable currents or eddies' that the Fifth Circuit has held cannot create personal jurisdiction." *Id.* (citing *Lillie*, 2015 WL 13741930, at *4)).

Additionally, Allied reiterates the reasoning of *Perez*. *Id.* at 3–4 (citing 1996 WL 511748). Allied notes that in *Choice Healthcare*, a case decided after *Perez*, the Fifth Circuit stated that, in *Perez*, it "held that no jurisdiction existed because neither the broad coverage language in the policy nor the mere approval of treatment in Texas constituted 'contact' with Texas." *Id.* at 4 (quoting *Choice Healthcare, Inc.*, 615 F.3d at 371) (citation omitted)).[6]

Lastly, Allied finds DBN's reliance on decisions from other circuits, see Doc. 85, DBN's Br. in Resp., 7–8, misplaced, because many of those cases "involved a duty to defend [the insured] . . . ." Doc. 87, Third-Party Defs.' Reply Br., 8. Here, Allied contends, there is no such duty with respect to the vehicle that Defendant Shagdarsuren drove because it is not specifically listed in the insurance policy. *Id.* Further, Allied states, the Fifth Circuit draws no distinction based on whether there is a duty to defend. *Id.* at 9 (citing *Choice Healthcare*, 615 F.3d at 371).

---

[6] Additionally, Allied indicates that the Seventh Circuit, Ninth Circuit, and other district courts have also concluded that an expansive territorial coverage clause does not confer personal jurisdiction over an insurer. *See id.* at 4–6 (citations omitted).

The Court holds that it lacks specific personal jurisdiction over Allied because Allied lacks "minimum contacts" with Texas that give rise to this cause of action. *See Int'l Shoe Co.*, 326 U.S. at 316; *Dalton*, 897 F.2d at 1361.

DBN alleges that Allied's obligation to provide insurance coverage in the United States to DBN—a business that ships cars across the United States—suffices to confer specific personal jurisdiction. *See* Doc. 85, DBN's Br. in Resp., 10–11. But the Court finds that the Fifth Circuit's reasoning in *Perez* forecloses this argument. *See* 1996 WL 511748, at *2.

In *Perez*, the plaintiffs were Guatemalan residents who purchased a health insurance policy from the defendant–insurer, a Guatemalan corporation. *Id.* at *1. When the plaintiffs' son fell ill, they took him to receive medical treatment in Houston, Texas—treatment that the defendant–insurer allegedly approved upon application by the plaintiffs. *Id.* Thereafter, the defendant–insurer refused to pay the plaintiffs' claims resulting from the treatment, and the plaintiffs filed suit in a Texas district court. *Id.* The district court granted the defendant–insurer's motion to dismiss for lack of personal jurisdiction. *Id.*

Reviewing this decision, the Fifth Circuit in *Perez* found "no evidence . . . that [the defendant–insurer ha[d] any contacts with the state of Texas, let alone 'minimum contacts' . . . ." *Id.* at *2. The Fifth Circuit noted that "the only arguable 'contacts' [the defendant–insurer] ha[d] with Texas [was] the worldwide coverage language in the policy itself," as well as plaintiffs' allegation that the defendant–insurer approved the treatment. *Id.*[7]

---

[7] Despite concluding that the defendant–insurer lacked minimum contacts with Texas, the Fifth Circuit continued to the second prong of the personal jurisdiction analysis, concluding that the exercise of personal jurisdiction over the defendant–insurer "would offend the traditional notions of fair play and substantial justice." *Id.*

Though *Perez* is not precedential, this Court finds it persuasive and concludes that the territorial coverage clause at issue is insufficient to establish minimum contacts by Allied with Texas. The Fifth Circuit has similarly relied upon *Perez* when analyzing specific personal jurisdiction over an insurer. *See Choice Healthcare*, 615 F.3d at 370–71. In *Choice Healthcare*, the Fifth Circuit utilized the reasoning of *Perez* to bolster its conclusion that the defendant–insurer's payment for treatment in the forum state was not a purposeful contact. *Id.* at 369–71 (noting the actions of the defendant–insurer in *Perez* did not "constitute[] 'contact' with Texas") (citing *Perez*, 1996 WL 511748, at *2).

Moreover, other district courts in Texas have looked to *Perez* and *Choice Healthcare* to foreclose a finding of personal jurisdiction based on a defendant–insurer's worldwide coverage clause. *See, e.g.*, *Lillie*, 2015 WL 13741930, at *4 (holding that though the defendant–insurer "purport[ed] to provide 'worldwide' coverage," it was not subject to specific personal jurisdiction in the forum state "given the *Choice Healthcare* decision and its endorsement of the reasoning in *Perez*"); *St. Luke's Episcopal Hosp. v. La. Health Serv. & Indem. Co.*, 2009 WL 47125, at *8 (S.D. Tex. Jan. 6, 2009) (rejecting the plaintiff's argument "that the provision of coverage in foreign states suffices for specific personal jurisdiction" because "cases such as *Perez* . . . make clear that merely providing out-of-state health coverage to insureds does not subject an insurer to personal jurisdiction in every foreign state in which an insured happens to obtain medical services").

Though these cases arise from a health—not automobile—insurance dispute, the Court finds no meaningful distinction between the two. Just as an individual may seek medical treatment in a variety of states, DBN may haul automobiles through a number of states. In either event, wide-

reaching insurance coverage, by itself, is not sufficient to create minimum contacts by an insurer with every covered state.

Further, the Court agrees with Allied that the nationwide coverage clause at issue here is indistinguishable from a worldwide coverage clause. *See* Doc. 87, Third-Party Defs.' Reply Br., 3 n.1. Here, the "coverage territory" of the policy includes "The United States of America," its "territories and possessions," "Puerto Rico," "Canada," and, under limited circumstances irrelevant here, "[a]nywhere in the world . . . ." Doc. 86, DBN's App., Ex. C, 55. Just as purporting to provide worldwide coverage is insufficient to establish minimum contacts, see *Lillie*, 2015 WL 13741930, at *4, so is purporting to provide the expansive coverage at issue here.

Finally, even assuming for the sake of argument that Allied has a duty to defend DBN in its lawsuit with Baird,[8] the Court does not find that an insurer's duty to defend an insured in a forum state creates personal jurisdiction over the insurer in that state. DBN has not pointed the Court to any controlling authority on this matter. But the Court notes that in *Lillie*, a Northern District of Texas district court concluded that it lacked personal jurisdiction over a defendant–insurer despite both: (1) the defendant–insurer's provision of worldwide coverage, and (2) the parties' disagreement over whether the policy included a duty to defend the insured party. *See* 2015 WL 13741930, at *1 n.1, *4.

This Court reaches the same conclusion here. Given that DBN alleges no contacts by Allied with Texas—aside from the nationwide coverage provision—any existing duty to defend in Texas

---

[8] The Court declines to rule on the existence of a duty to defend.

is insufficient to establish minimum contacts. As the Tenth Circuit noted in *OMI Holdings, Inc. v. Royal Insurance Company of Canada*:

> An insurance company who issues a policy in which it agrees to defend its insured in a certain forum can undoubtedly foresee that it may have to provide a defense for its insured who is haled into court there. It does not follow, however, that by agreeing to defend in the forum, that the insurance company also by implication agrees that it will litigate disputes between it and its insured regarding the terms of an insurance contract in a foreign forum.

149 F.3d 1086, 1095 (10th Cir. 1998).[9]

Overall, in light of *Perez*, *Choice Healthcare*, and *Lillie*, the Court concludes that the duty to defend in a forum state—like a nationwide insurance coverage provision—fails to create sufficient minimum contacts with the forum state. Accordingly, the Court lacks personal jurisdiction over Allied and **GRANTS** Allied's motion to dismiss.[10]

### 2. Jurisdictional Discovery Regarding General Personal Jurisdiction Over Allied

DBN urges the Court to authorize jurisdictional discovery if the Court finds that it lacks specific personal jurisdiction over Allied. Doc. 85, DBN's Br. in Resp.,16–17. Specifically, DBN seeks discovery "on whether Allied's business ties with Texas are sufficiently continuous and systematic as to support general jurisdiction." *Id.* at 17. This possibility is "not remote," according to DBN, given that Allied's successor company "holds itself out . . . as being a company with global reach . . . ." *Id.* (citing *id.* at 14 n.2).

---

[9] In *OMI Holdings*, the Tenth Circuit found that the duty to defend created "qualitatively low" contacts with the forum state, but it declined to exercise personal jurisdiction based on the second prong of the personal jurisdiction analysis—not based on a lack of minimum contacts. *Id.*

[10] Since the Court finds that Allied lacks minimum contacts with Texas, the Court need not address the second prong of the personal jurisdiction analysis. *See Ruston Gas Turbines, Inc.*, 9 F.3d at 418 (stating that a permissible exercise of personal jurisdiction requires the defendant to have "minimum contacts" with the forum state) (citation and quotation marks omitted).

Allied, on the other hand, points out that the Court "need not permit jurisdictional discovery" where the "claimant fails to make even a preliminary showing of jurisdiction . . . ." Doc. 87, Third-Party Defs.' Reply Br., 9 (citations omitted). Here, Allied alleges, DBN has "hardly" made a showing warranting jurisdictional discovery, given that DBN only suggests that R&Q purports to be a company with global reach. *Id.* (citation and quotation marks omitted).

The Court agrees. "The Fifth Circuit . . . has held that jurisdictional discovery is only appropriate after a plaintiff has made a preliminary showing of jurisdiction." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 620 (N.D. Tex. 2014) (collecting cases). To make a preliminary showing, the plaintiffs' pleadings must contain "factual allegations that reasonably suggest that personal jurisdiction exists . . . ." *Id.* (citing *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (citation omitted)).

Here, DBN's allegations supporting an exercise of general personal jurisdiction over Allied are limited to a statement on the website of Allied's successor company indicating that it operates "throughout the United States and internationally." Doc. 85, DBN's Br. in Resp., 14 (citing https://www.rq-solutions.com/pages/faq/html). This statement, taken as true, does not "reasonably suggest" that Allied is subject to general personal jurisdiction in Texas. *See Innova*, 995 F. Supp. 2d at 620. Thus, the Court **DENIES** DBN's request for jurisdictional discovery.

V.

CONCLUSION

For the reasons stated, the Court **GRANTS** Third-Party Defendants' motion (Doc. 82) and **DISMISSES** all claims against Third-Party Defendants without prejudice.

SO ORDERED.

SIGNED: December 5, 2019.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE