# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| KEVIN L. BAIRD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-2000-B |
| | § | |
| OTGONBAATAR SHAGDARSUREN | § | |
| & DBN CARRIER, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Partial Summary Judgment (Doc. 88) against

Plaintiff Kevin Baird. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN**

**PART** the motion.

## I.

## BACKGROUND[1]

A.      *Plaintiff's Accident with Defendant Shagdarsuren*

This case arises from a collision between a car and tractor-trailer. Plaintiff Kevin Baird alleges

that in November of 2015, he and Defendant Otgonbaatar Shagdarsuren were driving on a service

road, when Defendant Shagdarsuren made a right-hand turn with his tractor-trailer from the middle

---

[1] The Court draws its factual history from the pleadings and the summary-judgment record. Any
contested fact is identified as the contention of a particular party.

lane and collided with Plaintiff's car. Doc. 32, Pl.'s Second Am. Compl., ¶ 6.[2]

Defendant Shagdarsuren explains that he was exiting from the freeway and needed to turn right, but he was unable to switch into the right lane due to the amount of cars on the frontage road. Doc. 90-1, Defs.' App., 40 (Shagdarsuren's Dep.). Thus, he instead attempted to turn from the middle[3] lane. *See id.* at 39–40. At this point, Plaintiff was planning to pass Defendant Shagdarsuren's tractor-trailer by driving in the right-hand lane. *See id.* at 13–14 (Baird's Dep.). Defendant Shagdarsuren contends that he thought he could make the turn before Plaintiff's car passed him on the right. *See id.* at 36–37 (Shagdarsuren's Dep.). But, as Plaintiff explains, Defendant Shagdarsuren "turn[ed] right into [him]" and never signaled that he was turning. *Id.* at 13–14 (Baird's Dep.).

The officer responding to the accident filled out a police report, and he identified one "[c]ontributing factor" to the accident: Defendant Shagdarsuren performed a lane change when it was unsafe to do so. *See id.* at 3, 8 (Crash Report and Crash Report Code Sheet). The officer also noted two additional potential contributing factors: distraction in Defendant Shagdarsuren's vehicle and Defendant Shagdarsuren's inattention. *Id.*

During the accident, Plaintiff contends, Defendant Shagdarsuren was acting as an employee–driver for Defendant DBN Carrier, Inc. Doc. 32, Pl.'s Second Am. Compl., ¶ 7. Defendant Shagdarsuren admits that on the day of the accident, he inaccurately logged his hours of driving for Defendant DBN by one-and-a-half hours. Doc. 97-1, Pl.'s App., 142 (Shagdarsuren's Dep.). Further,

---

[2] Though Plaintiff characterizes this as a turn from the "left" lane, the responding officer described it as a turn from the "middle" lane. *See* Doc. 90-1, Defs.' App., 3 (Crash Report and Crash Report Code Sheet). This difference in characterization is immaterial to the Court's analysis.

he admits that his driving log was inaccurate by four hours on the day before the incident. *See id.* at 147.

Additionally, Defendant Shagdarsuren did not disclose the accident to Defendant DBN for nearly two weeks. Doc. 90-1, Defs.' App., 75 (Lkhamsuren's Dep.). And following the accident, Defendant Shagdarsuren failed to take a drug test, though he knew that he was supposed to. Doc. 32, Pl.'s Second Am. Compl., ¶ 10; Doc. 90-1, Defs.' App., 40–41 (Shagdarsuren's Dep.). He was ultimately fired from Defendant DBN in January of 2016. Doc. 90-1, Defs.' App., 76 (Lkhamsuren's Dep.). Moreover, the U.S. Department of Transportation (DOT) fined Defendant DBN for Defendant Shagdarsuren's failure to take the post-accident, drug-and-alcohol test, as well as for Defendant DBN's failure to properly maintain their driver qualification files. Doc. 32, Pl.'s Second Am. Compl., ¶ 11; Doc. 97-1, Pl.'s App., 251–53 (DOT Penalty Notice).

B.    *Defendant Shagdarsuren's Driving Background*

Prior to his employment with Defendant DBN, Defendant Shagdarsuren lived in Mongolia, where he drove a box truck for approximately six years. Doc. 90-1, Defs.' App., 31–32 (Shagdarsuren's Dep.). Upon moving to the United States in 2003, Defendant Shagdarsuren drove only a passenger car until 2014. *Id.* at 32. In June of 2014, Defendant Shagdarsuren obtained a California commercial driver's license upon attending a two-to-three week training. *Id.* at 27–28; 47 (Shagdarsuren's Driving Record).

Defendant DBN hired Defendant Shagdarsuren in September of 2014. Doc. 97-1, Pl.'s App., 47 (Lkhamsuren's Dep.). Though Defendant DBN conducted a driving test for Defendant Shagdarsuren before hiring him, he received only checkmarks for each driving category—not ratings, as called for on the test form. *See id.* at 277 (Shagdarsuren's Road Test). Further, the test form is

blank with respect to the examiner's name and the type of equipment used for the test. *See id.* While Defendant DBN's President, Bayasgalan Lkhamsuren,[4] indicates that she believes the form was completed by her brother-in-law, a then-employee for Defendant DBN, see *id.* at 16, 49 (Lkhamsuren's Dep.), her brother-in-law states that the signature on the form is not his. *Id.* at 292 (Batulzil's Dep.). Likewise, he denies signing Defendant Shagdarsuren's Certificate of Driver's Road Test. *Id.* at 293.

Aside from the accident with Plaintiff, Defendant Shagdarsuren has two driving violations on his California driving record. *See* Doc. 90-1, Defs.' App., 47 (Shagdarsuren's Driving Record). The first was his failure to stop at a stop sign in October of 2013, for which he received a ticket. *Id.* The second was an accident that took place in December of 2014. *Id.* Defendants characterize the accident as a "minor fender-bender," and Plaintiff does not suggest otherwise. Doc. 89, Defs.' Br., 14; *see generally* Doc. 96, Pl.'s Resp.

C.     *Plaintiff's Claims Against Defendants Shagdarsuren and DBN*

Now, Plaintiff seeks to recover damages incurred as a result of the accident with Defendant Shagdarsuren. *See* Doc. 32, Pl.'s Second Am. Compl., ¶ 16. Plaintiff brings the following causes of action: (1) negligence and gross negligence against Defendants Shagdarsuren and DBN based on Defendant Shagdarsuren's actions; and (2) negligent and grossly negligent entrustment, hiring, retention, supervision,[5] and training against Defendant DBN. Doc. 32, Pl.'s Second Am. Compl.,

---

[4] *See id.* at 298 (DOT Record).

[5] Though Plaintiff's response to Defendants' motion expressly includes allegations of negligent supervision, his second amended complaint does not. *See* Doc. 96, Pl.'s Resp.,18–19; Doc. 32, Pl.'s Second Am. Compl., ¶ 14. In any event, because courts often address negligent supervision claims in conjunction with negligent hiring and retention claims, see, *e.g.*, *Sanchez v. Swift Transp. Co. of Ariz*, 2016 WL 10587126, at *10 (W.D. Tex. June 14, 2016), the Court addresses the negligent supervision claim with Plaintiff's

3–5. Defendants move for summary judgment on all claims except the negligence claim premised on Defendant Shagdarsuren's actions. *See* Doc. 89, Defs.' Br., 8–22.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (a). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary-judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir.1990). Usually, this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted). But if the non-movant ultimately bears the burden of proof at trial, the summary-judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting an essential element of the non-movant's claim. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 n.10 (5th Cir. 2017).

Once the summary-judgment movant has met this burden, the burden shifts to the non-movant to "go beyond the pleadings and designate specific facts" showing that a genuine issue exists. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (per curiam) (citing *Celotex*, 477 U.S.

---

negligent hiring and retention claims.

at 325). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the non-moving party must "come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted). "[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations incorporated and quotations marks omitted). But the court need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998) (citation and quotation marks omitted). If the non-movant is unable to make the required showing, the court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

## ANALYSIS

Defendants assert that Plaintiff lacks evidence to support his: (1) gross negligence claim against Defendant Shagdarsuren based on Defendant Shagdarsuren's actions; (2) gross negligence claim against Defendant DBN based on Defendant Shagdarsuren's actions; and (3) negligent and grossly negligent entrustment, hiring, retention, and training claims against Defendant DBN. *See* Doc. 89, Defs.' Br., 8–22. Below, the Court addresses the merits of Defendants' motion as to each claim. Ultimately, the Court concludes that summary judgment in Defendants' favor is warranted as to all claims except Plaintiff's negligent training claim against Defendant DBN.

A.      *Gross Negligence Claim Against Defendant Shagdarsuren Based on His Actions*

Plaintiff has not raised a genuine dispute of material fact regarding Defendant Shagdarsuren's

gross negligence. Under Texas law, exemplary damages are only available when a claimant proves by clear-and-convincing evidence that the harm suffered is the result of fraud, malice, or gross negligence. TEX. CIV. PRAC. & REM. CODE § 41.003(a). The clear-and-convincing evidence standard controls at the summary-judgment stage, meaning that a plaintiff alleging gross negligence must offer "evidence that is 'sufficient to make the existence of the facts highly probable,' not merely evidence that is 'sufficient to make the existence of fact more probable than not . . . .'" *Partida Aranda v. YRC Inc.*, 2019 WL 2357528, at *3 (N.D. Tex. June 4, 2019) (citations omitted).

Texas law defines gross negligence as:

"an act or omission (1) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others."

*Baker v. BNSF Ry. Co.*, 2010 WL 4063203, at *4 (N.D. Tex. Oct. 13, 2010) (quoting TEX. CIV. PRAC. & REM. CODE § 41.001(11)). "Circumstantial evidence is sufficient to prove either element." *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001) (citations omitted).

Defendants contend that Defendant Shagdarsuren's actions leading up to the accident do not pose an extreme degree of risk or demonstrate a conscious disregard of risk. *See* Doc. 89, Defs.' Br., 9–10.

Plaintiff, however, relies upon three alleged actions taken by Defendant Shagdarsuren to support his gross negligence claim. *See* Doc. 96, Pl.'s Resp., 7–10.[6]

---

[6] Before addressing the merits of his claim, Plaintiff suggests that this case is inappropriate for summary judgment because it involves questions regarding state of mind. *See id.* at 3. However, Defendants note, and this Court agrees, that this contention lacks merit, given that courts routinely grant summary judgment on gross negligence claims. *See* Doc. 99, Defs.' Reply, 10; *see, e.g., Ruelas v. W. Truck & Trailer*

First, Plaintiff alleges that Defendant Shagdarsuren falsified his driving logs. *Id.* at 7–9. Plaintiff notes that Defendant Shagdarsuren admitted during his deposition that his driving log was off by one-and-a-half hours on the day of the accident. *Id.* at 8. Further, Plaintiff points out that the day prior to the accident, Defendant Shagdarsuren's driving log was off by four hours, and Defendant Shagdarsuren conceded that he was "possibly" working more hours than the amount recorded on the log. *Id.* at 8–9. Based on these "repeated falsifications," Plaintiff states, Defendants' own trucking expert opined that "there is no reason to believe anything that Shagdarsuren wrote in his logs before the incident." *Id.* at 9. Second, Plaintiff suggests that Defendant Shagdarsuren's failure to complete a drug test following the accident further demonstrates his gross negligence—as Plaintiff's trucking expert concluded. *Id.* at 10. Third, Plaintiff points to Defendant Shagdarsuren's lack of knowledge of federal regulations. *Id.*

In response, Defendants reiterate that Plaintiff lacks any "actual evidence of fatigue or intoxication." Doc. 99, Defs.' Reply, 4. For support, Defendants point out that the officer investigating the accident did not indicate intoxication or fatigue as a cause of the accident. *Id.* at 5. Instead, the officer identified the cause as an unsafe lane change by Defendant Shagdarsuren. *Id.* Defendants contend that, rather than offering evidence to support his claim, Plaintiff is attempting to "improperly shift the burden of proof upon Shagdarsuren to affirmatively prove that he was not intoxicated or fatigued." *Id.* at 4.

The Court agrees, holding that Plaintiff has failed to create a genuine dispute of material fact regarding whether Defendant Shagdarsuren's actions constituted gross negligence. First, Defendant

---

*Maint.*, 2019 WL 4060891, at *8 (W.D. Tex. June 6, 2019); *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 656 (S.D. Tex. 2016).

Shagdarsuren's driving log discrepancies fail to make his alleged fatigue "highly probable." *Partida Aranda*, 2019 WL 2357528, at *3 (citation and quotation marks omitted). In an attempt to connect the driving log discrepancies to the accident, Plaintiff suggests that because the driving log was inaccurate in some respects, it is inaccurate altogether. *See* Doc. 96, Pl.'s Resp., 9. But even if the Court infers that Defendant Shagdarsuren's driving log is unreliable, and thus he may have been fatigued on the day of the accident, this evidence alone is insufficient to overcome the clear-and-convincing burden: it does not create a high probability that Defendant Shagdarsuren was fatigued and assumed "an extreme degree of risk . . . ." *See Partida Aranda*, 2019 WL 2357528, at *5 (citation omitted); *Baker*, 2010 WL 4063203, at *4.

Nor does Defendant Shagdursuren's failure to obtain a post-accident drug test create a high probability that he was intoxicated during the accident. Rather, such a conclusion is mere conjecture. Though Plaintiff states that "the Federal Motor Carrier Safety Administration considers a driver to have tested positive" when the driver refuses a post-accident drug test, a violation of federal regulations does not establish gross negligence per se. *See U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 139 (Tex. 2012).[7] And Plaintiff does not dispute that the investigating officer's report fails to mention intoxication. Under these circumstances, Plaintiff's evidence of Defendant Shagdarsuren's alleged intoxication falls short of the clear-and-convincing standard. Thus, intoxication cannot form the basis of Defendant Shagdarsuren's assumption of an extreme risk.

Likewise, Defendant Shagdarsuren's alleged unawareness of federal regulations is insufficient to establish gross negligence. The Court construes this allegation as an omission—a failure on

---

[7] Additionally, the Court notes that Plaintiff does not even cite to language from a federal regulation—he cites to language from a Federal Motor Carrier Safety Administration webpage.

Defendant Shagdarsuren's part to educate himself on federal regulations. Even assuming, for the sake of argument, that this omission "involves an extreme degree of risk," Plaintiff has offered no evidence suggesting that Shagdarsuren, by lacking knowledge of federal regulations, "proceed[ed] with conscious indifference to the rights, safety, or welfare of others." *See Baker*, 2010 WL 4063203, at *4. Accordingly, Plaintiff fails to create a genuine dispute of material fact on the subjective element of his gross negligence claim against Defendant Shagdarsuren. Though circumstantial evidence can substantiate a gross negligence claim, Plaintiff's only circumstantial evidence—Defendant Shagdarsuren's unawareness of federal regulations—does not amount to conscious indifference.

Finally, even considering the evidence as a whole, the Court finds that the evidence fails to demonstrate gross negligence by Defendant Shagdarsuren. Thus, the Court **GRANTS** summary judgment on Plaintiff's gross negligence claim against Defendant Shagdarsuren.

B.      *Gross Negligence Claim Against Defendant DBN Based on Defendant Shagdarsuren's Actions*

Plaintiff has not created a genuine dispute of material fact with respect to his gross negligence claim against Defendant DBN. "A corporation may be liable in punitive damages for gross negligence only if the corporation itself commits gross negligence." *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). Where the corporation's liability is based on the acts of its agent, punitive damages are awardable if "the agent was unfit and the principal was reckless in employing him . . . ." *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997) (quoting Restatement of Torts § 909 (Am. Law Inst. 1939)).

Thus, for a court to impose punitive damages, the plaintiff must establish "that [the employer] knew, and was consciously indifferent to, the risk associated with hiring [the employee.]" *See U-Haul*, 380 S.W.3d at 140. Put differently, "[t]he employer must be aware of the peril caused

by its employee, but demonstrate by [its] acts or omissions that it does not care." *Phillips*, 189 F. Supp. 3d at 658 (citing *McDorman ex rel. Connelly v. Texas-Cola Leasing Co. LP*, 288 F. Supp. 2d 796, 809–10 (N.D. Tex. 2003)).

In the context of claims premised on an employee's driving, a failure to sufficiently inquire into the employee's driving record is insufficient to impose punitive damages; rather, "courts that find sufficient evidence of gross negligence are faced with egregious driving records of which the employer was aware and took no action to address." *Id.* (collecting cases).

Here, Plaintiff seeks to recover for gross negligence based on the premise that Defendant Shagdarsuren was unfit, and Defendant DBN was reckless in employing him. Doc. 96, Pl.'s Resp., 20 (citing *Hammerly Oaks*, 958 S.W.2d at 391 (Tex. 1997); *Wilson N. Jones Mem'l Hosp. v. Davis*, 553 S.W.2d 180, 182–83 (Tex. App.—Waco 1977, writ ref'd)).

Defendant DBN disputes that it was reckless in hiring Defendant Shagdarsuren, pointing out Defendant Shagdarsuren's experience in driving commercial vehicles, his valid commercial driver's license, and his unremarkable driving record. Doc. 89, Defs.' Br., 13–14. His driving record, Defendants explain, had only one traffic ticket and one accident. *Id.* at 14. The ticket was a charge, not a conviction, for failing to stop at a stop sign in 2013, and the accident was "a minor fender-bender" from 2014. *Id.*[8]

Plaintiff, on the other hand, emphasizes that two different experts expressed opinions that Defendant Shagdarsuren was not qualified to drive a truck. Doc. 96, Pl.'s Resp.,13, 23. But Plaintiff

---

[8]Defendant Shagdarsuren's deposition testimony does not clarify exactly what happened in the accident. *See* Doc. 90-1, Defs.' App., 33–34 (Shagdarsuren's Dep.). But Plaintiff does not contest this characterization of the prior accident in his response. *See generally* Doc. 96, Pl.'s Resp.

fails to point to facts supporting these opinions; rather, Plaintiff focuses on Defendant DBN's allegedly inadequate hiring process. *See id.* at 11–15. For instance, Plaintiff points out that Lkhamsuren—who was supposedly responsible for safety at DBN in 2015—lacks the knowledge required for this responsibility. *Id.* at 11 (citing, *e.g.*, Doc. 97-1, Pl.'s App., 332 (Lkhamsuren's Dep.) (admitting uncertainty regarding the hours restrictions placed upon commercial truck drivers)). Moreover, Plaintiff notes that Lkhamsuren admitted that Defendant DBN did not maintain Defendant Shagdarsuren's driver's qualification file. *Id.* at 12–13.

Additionally, Plaintiff states, Lkhamsuren's brother-in-law allegedly conducted Defendant Shagdarsuren's driving test prior to his employment with DBN. *Id.* at 14–15. Yet Lkhamsuren's brother-in-law stated that the signature on the road test form was not his. *Id.* at 15. Likewise, he claims the signature on Defendant Shagdarsuren's Certificate of Driver's Road Test is not his either. *Id.* Yet this Certificate states that "[i]f the road test is successfully completed, the person who gave it shall complete [the Certificate.]" Doc. 97-1, Pl.'s App., 279 (Certificate of Driver's Road Test). And the Certificate is blank with respect to the date of the test, the number of miles driven during the test, the title of the examiner, and the organization and address of the examiner. *See id.*

Despite these circumstances, the Court concludes that a reasonable jury could not find that Defendant Shagdarsuren was unfit and that Defendant DBN was reckless in employing him.

First, the evidence fails to demonstrate that Defendant Shagdarsuren was unfit to work for Defendant DBN. Prior to his employment with Defendant DBN, Defendant Shagdarsuren had experience driving a commercial vehicle, as well as a valid commercial driver's license. Doc. 90-1, Defs.' App., 31–32 (Shagdarsuren's Dep.); *id.* at 47 (Shagdarsuren's Driving Record). His driving violations included one ticket and one accident. *Id.* at 47 (Shagdarsuren's Driving Record). But one

ticket and once accident does not demonstrate "an extreme risk for a traffic accident . . . ." *McDorman*, 288 F. Supp. 2d at 810.

Indeed, "Texas courts have set the bar high" for establishing incompetence based on an employee–driver's driving record. *See Phillips*, 189 F. Supp. 3d at 653, 658. When they do find a driver incompetent, "the record contains convictions and violations that are related to the accident, frequent, and recent." *Id.* at 653 (noting that "[a] record with two moving violations or accidents within a two-year period prior to the accident is . . . insufficient") (citation omitted).

Defendant Shagdarsuren's violations were infrequent, considering that there are only two on record. Further, neither relate to an improper turn by Defendant Shagdarsuren. Finally, the most recent violation preceded Defendant Shagdarsuren's accident with Plaintiff by almost one year. *See* Doc. 89, Defs.' Br., 1; Doc. 90-1, Defs.' App., 47 (Shagdarsuren's Driving Record). Accordingly, Plaintiff has not provided evidence from which a reasonable juror could conclude that Defendant Shagdarsuren was unfit for employment with Defendant DBN.

Second, even assuming for the sake of argument that Defendant Shagdarsuren was unfit for employment as a commercial truck driver, Plaintiff has not pointed to evidence suggesting conscious indifference by Defendant DBN. *See U-Haul*, 380 S.W.3d at 140. Rather, Plaintiff's evidence—especially Defendant Shagdarsuren's driving test documentation—suggests merely a lack of proper oversight by Defendant DBN.

Nevertheless, while the evidence may be troubling, it does not demonstrate that Defendant DBN consciously disregarded a risk in employing Defendant Shagdarsuren. *Cf. Perez Librado v. M.S. Carriers, Inc.*, 2004 WL 1490304, at *4–6 (N.D. Tex. June 30, 2004) (concluding that a jury could reasonably infer conscious indifference based on evidence of a driver's 322 driving log violations,

along with his employer's awareness of the violations and failure to discipline him). Accordingly, the Court **GRANTS** summary judgment on Plaintiff's gross negligence claim against Defendant DBN.

C.    *Negligent and Grossly Negligent Entrustment, Hiring, Retention, Supervision, and Training Claims Against Defendant DBN*

Plaintiff brings claims against Defendant DBN for negligent and grossly negligent entrustment, hiring, retention, supervision, and training. DBN addresses these four claims together, contending that Texas courts apply "the same standard" to all of the claims. *See* Doc. 88, Defs.' Mot., 2; Doc. 89, Defs.' Br., 15. Specifically, Defendants point to a Texas Supreme Court case that analyzed negligent entrustment and hiring claims jointly, where the court noted that in both claims, "a plaintiff must show that the risk that caused the entrustment or hiring to be negligent also proximately caused plaintiff's injuries." *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 240 (Tex. 2010) (citation omitted).

Defendants contend that because Plaintiff has not offered evidence of a risk that "would have put DBN on notice that [Shagdarsuren] was likely to make an improper turn like he did on the day of the accident," Plaintiff's negligent and grossly negligent entrustment, hiring, retention, supervision, and training claims fail. Doc 89, Defs.' Br., 19; *see also id.* at 15–17 (relying upon *TXI Transp. Co.*, 306 S.W.3d 230 and *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754 (Tex. 2007)).

Though the Court recognizes overlap between some of these claims, Defendants' suggestion that "the same standard" applies to all four claims oversimplifies Texas law, which treats some of these claims as independent theories of recovery. Accordingly, below, this Court analyzes the claims as follows: (1) negligent and grossly negligent entrustment; (2) negligent and grossly negligent hiring, retention, and supervision; and (3) negligent and grossly negligent training.

1.    Negligent and grossly negligent entrustment

Plaintiff has failed to raise a genuine issue of material fact on his negligent entrustment claim. To prevail on a negligent entrustment claim, "the plaintiff must show: (1) entrustment of the vehicle by its owner or custodian, (2) to an incompetent driver, (3) that the owner knew or should have known was unlicensed, incompetent, or reckless, (4) that the driver was negligent, and (5) the driver's negligence proximately caused the accident." *McDorman*, 288 F. Supp. 2d at 806 (citation omitted). Courts determine whether a driver is reckless or incompetent at the time of entrustment, not the time of the accident. *Onofre v. C.R. England, Inc.*, 2016 WL 3406196, at *6 (W.D. Tex. June 17, 2016) (citing *Louis Thames Chevrolet Co. v. Hathaway*, 712 S.W.2d 602, 604 (Tex. App.—Houston [1st Dist.] 1986, no writ)).

"The possession of a valid, unrestricted driver's license is evidence of a driver's competency absent any evidence to the contrary." *Batte v. Hendricks*, 137 S.W.3d 790, 791 (Tex. App.—Dallas 2004, pet. denied). Further, as noted above, courts consider "the number and remoteness of [traffic] violations in assessing whether the record is sufficient to establish recklessness or incompetence." *Phillips*, 189 F. Supp. 3d at 653. For example, two accidents within a two-year period of the accident at issue is insufficient. *Id.* (citation omitted). Likewise, citations for driving without insurance, speeding, and rear-ending a vehicle are insufficient to create a genuine dispute of material fact. *See Goodyear Tire*, 236 S.W.3d at 758.

As discussed briefly above, a reasonable jury could not find that Defendant Shagdarsuren was an incompetent or reckless driver. The only potential evidence of incompetence at the time of entrustment—Defendant Shagdarsuren's previous ticket and accident—are insufficient to demonstrate incompetence. *See McDorman*, 288 F. Supp. 2d at 810.

Plaintiff also points to other conduct by Defendant Shagdarsuren suggesting incompetence, such as his improper turn on the day of the accident, failure to report the accident, refusal to take a post-accident drug test, and failure to maintain driver qualification files in his own trucking business. Doc. 96, Pl.'s Resp., 21. But none of these actions or omissions took place prior to entrustment; thus, they are irrelevant to Plaintiff's negligent entrustment claim. *See Onofre*, 2016 WL 3406196, at *6 (citation omitted).

The only evidence to which Plaintiff points that precedes the accident is Defendant Shagdarsuren's inaccurate driving logs. *See* Doc. 96, Pl.'s Resp., 21. But these logs do not reflect Defendant Shagdarsuren's driving abilities, so they are not evidence of his incompetence or recklessness as a driver. *See McGuire v. Wright*, 1998 WL 156342, *3 (5th Cir. Mar. 23, 1998) (per curiam) ("Within the context of negligent entrustment, a driver is reckless when his *driving* presents a danger to others."). Though the Court acknowledges that a multitude of driving log violations might serve as circumstantial evidence of reckless driving, such is not the case here, given that Plaintiff has pointed to only two inaccuracies in Defendant Shagdarsuren's driving log.

Next, Plaintiff also relies upon federal regulations to suggest that Defendant Shagdarsuren's possession of a commercial driver's license fails to qualify him as a truck driver. *See* Doc. 96, Pl.'s Resp., 22. But this reliance is misplaced—Texas law, not compliance with federal regulations, is dispositive. *See U-Haul*, 380 S.W.3d at 139 ("The mere existence of federal regulations does not establish the standard of care . . . .") (citations omitted). And under Texas law, "possession of a valid, unrestricted driver's license is evidence of a driver's competency absent any evidence to the contrary." *Batte*, 137 S.W.3d at 791.

Finally, Plaintiff points to experts' testimony that Defendant Shagdarsuren was incompetent. Doc. 96, Pl.'s Resp., 23. First, Defendants' trucking expert indicated that, in light of Defendant Shagdarsuren's deposition testimony, the expert would not employ Defendant Shagdarsuren as a driver for his company. Doc. 97-1, Pl.'s App., 215–16 (Mohon's Dep.). But this opinion was rendered based on the practices of the expert's own company; thus, it does not create a fact issue with respect to Defendant Shagdarsuren's alleged incompetence.

Second, Plaintiff's expert stated that based on Defendant Shagdarsuren's deposition testimony, Defendant Shagdarsuren was not competent to drive a truck. *Id.* at 402 (Stopper Aff.). This opinion was founded upon Defendant Shagdarsuren's post-accident deposition and the expert's review of his driver qualification file. *Id.* The expert lists several facts from Defendant Shagdarsuren's deposition upon which the expert relied, but none create a fact issue on Defendant Shagdarsuren's alleged incompetence.

For instance, the expert relies upon Defendant Shagdarsuren's present lack of knowledge of proper turning technique and driving regulations; his failure to take a post-accident drug test; and his failure to timely notify Defendant DBN of the accident. *Id.* But none of these facts bear upon whether Defendant DBN knew or should have known of Defendant Shagdarsuren's incompetence *at the time of entrustment.*[9] Though, arguably, Defendant Shagdarsuren's lack of knowledge of proper turning technique could be circumstantial evidence that he lacked such knowledge at the time of

---

[9] The expert also relied upon Defendant Shagdarsuren's inaccurate driving logs, see *id.*, but as discussed above, these are insufficient to demonstrate Defendant Shagdarsuren's incompetence or recklessness.

entrustment, this evidence alone is insufficient to overcome the high bar Plaintiff faces in establishing incompetence. *See Phillips*, 189 F. Supp. 3d at 653.

And turning to Defendant Shagdarsuren's driver qualification file, the expert states that it reveals "nothing" to "indicate that [Shagdarsuren] was qualified to drive a truck tractor and semi-trailer in interstate commerce at the time he was hired or thereafter . . . ." Doc. 97-1, Pl.'s App., 403 (Stopper Aff.). But while an incomplete driver qualification file may suggest that Defendant DBN lacked knowledge of Defendant Shagdarsuren's abilities, this absence of information does not demonstrate that Defendant Shagdarsuren was an incompetent driver.

Given Plaintiff's lack of evidence of Defendant Shagdarsuren's incompetence, and Defendant Shagdarsuren's possession of a valid commercial driver's license, Plaintiff has failed to raise a genuine dispute of material fact on Defendant Shagdarsuren's incompetence or recklessness. Accordingly, the Court **GRANTS** summary judgment on Plaintiff's negligent entrustment claim.

Moreover, because the Court grants summary judgment on Plaintiff's negligent entrustment claim, the grossly negligent entrustment claim too fails. *See Finley v. Vermeer Mfg. Co.*, 2019 WL 5058901, at *4 (W.D. Tex. July 11, 2019); *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 174 (Tex. App.—Houston [14th Dist.], 1994, writ denied) ("Although gross negligence refers to a different character of conduct, a party's conduct cannot be gross negligence without being negligent.") (citation omitted)). Thus, the Court **GRANTS** summary judgment on Plaintiff's grossly negligent entrustment claim.

### 2. Negligent and grossly negligent hiring, retention, and supervision

Plaintiff fails to raise a genuine dispute of material fact on his negligent hiring, retention, and supervision claims as well. "Negligent hiring, retention, and supervision claims are all simple

negligence causes of action based on an employer's direct negligence rather than on vicarious liability." *Phillips*, 189 F. Supp. 3d at 648 (citing *Guidry v. Nat'l Freight, Inc.*, 944 S.W.2d 807, 910 (Tex. App.—Austin 1997, no writ) (citations omitted)). Accordingly, these claims require the plaintiff to show a legal duty, a breach of that duty, and damages proximately caused by the breach. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

An employer faces liability for negligent hiring, retention, or supervision "if it hires an incompetent or unfit employee whom the employer knows, or reasonably should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others." *Cox v. City of Fort Worth*, 762 F. Supp. 2d 926, 940 (N.D. Tex. 2010) (citations omitted); *Herrera v. Werner Enters., Inc.*, 2015 WL 12672469, at *3 (W.D. Tex. Sept. 14, 2015) (citation and quotation marks omitted). "The analysis of whether a driver's traffic violations and collision history establish a fact issue concerning incompetence or recklessness in the context of a negligent hiring claim premised on these characteristics mirrors that of a negligent entrustment claim." *Sanchez*, 2016 WL 10587126, at *10 (citation omitted). Thus, where an employee–driver's traffic violations are insufficient to demonstrate recklessness or incompetence, the plaintiff fails to raise a genuine dispute of material fact as to its negligent hiring, supervision, and retention claims. *See id.*

Here, Plaintiff has not raised a genuine issue of material fact as to whether Defendant DBN knew or should have known that Defendant Shagdarsuren was an incompetent employee. As already discussed, Defendant Shagdarsuren's driving record prior to the accident with Plaintiff is insufficient to create a fact issue on his incompetence. Thus, it is necessarily insufficient to create a fact issue on whether Defendant DBN knew or should have known of his incompetence.

Moreover, Defendant Shagdarsuren's improper turn, and his actions following the improper turn, are not evidence that DBN knew or should have known of Defendant Shagdarsuren's incompetence. Though this evidence could suggest that Defendant DBN should have known Defendant Shagdarsuren was incompetent *after* the accident with Plaintiff, such evidence lacks the proximate cause necessary for Plaintiff's claim. *See Phillips*, 189 F. Supp. 3d at 648 (citation omitted) (noting that negligent hiring, retention, and supervision claims require proximate cause).

Likewise, the expert testimony relied upon by Plaintiff fails to create a fact issue regarding whether Defendant DBN knew or should have known of Defendant Shagdarsuren's incompetence as a driver. Just as the facts forming the basis of Plaintiff's expert's testimony have no bearing on Defendant Shagdarsuren's incompetence at the time of entrustment, see *supra* 16–17, they likewise have no bearing on Defendant Shagdarsuren's incompetence before the accident. Thus, they are not evidence that Defendant DBN knew or should have known of Defendant Shagdarsuren's incompetence before the accident.

In sum, just as Plaintiff's negligent entrustment claim lacks evidence of incompetence at the time of entrustment, Plaintiff's negligent hiring, supervision, and retention claims lack evidence that Defendant DBN knew or should have known of Defendant Shagdarsuren's alleged incompetence prior to the accident with Plaintiff. Thus, the Court **GRANTS** summary judgment on Plaintiff's negligent hiring, supervision, and retention claims.

Further, because the Court grants summary judgment on Plaintiff's negligent hiring, supervision, and retention claims, the Court also **GRANT**S summary judgment on Plaintiff's grossly negligent hiring, supervision, and retention claims. *See Finley*, 2019 WL 5058901, at *4; *Shell Oil Co.*, 880 S.W.2d at 174.

### 3.    Negligent and grossly negligent training

Plaintiff has raised a genuine dispute of material fact on his negligent training claim. Since a negligent training claim is premised on an employer's negligence, such a claim requires all elements of an ordinary negligence claim: a legal duty, a breach of that duty, and damages proximately caused by the breach. *Greater Houston Transp. Co.*, 801 S.W.2d at 525. To show the breach and proximate cause elements of a negligent training claim, the plaintiff must show that "a reasonably prudent employer would have provided training beyond that which was given and that failure to do so caused his injuries." *Ruelas*, 2019 WL 4060891, at *5 (quotation marks omitted) (citing *Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App.—Fort Worth 2008, no pet.)); *Luster v. City of Dallas*, 2018 WL 3654770, at *2 (N.D. Tex. July 17, 2018), *report and recommendation adopted by* 2018 WL 3641685, at *1 (N.D. Tex. Aug. 1, 2018) (same).

Though Defendants move for summary judgment on Plaintiff's negligent training claim, Defendants point to Plaintiff's lack of evidence of Defendant Shagdarsuren's incompetence—but incompetence of an employee is not an essential element of a negligent training claim. *See* Doc. 89, Defs.' Br., 16; *Greater Houston Transp. Co.*, 801 S.W.2d at 525; *Ruelas*, 2019 WL 4060891, at *5 (citation omitted). Rather, Defendants must point to a lack of evidence that "a reasonably prudent employer would have provided training beyond that which was given and that failure to do so caused [the plaintiff's] injures." *Ruelas*, 2019 WL 4060891, at *5 (citation omitted). Accordingly, Defendants have not satisfied their burden of pointing to an absence of evidence on an essential element of Plaintiff's negligent training claim. *See Austin*, 864 F.3d at 335 n.10. Accordingly, the Court **DENIES** summary judgment as to Plaintiff's negligent training claim.

With respect to his grossly negligent training claim, however, Plaintiff cannot avoid summary judgment. As previously discussed, liability based on gross negligence requires an act or omission that, viewed objectively from the actor's perspective, "involves an extreme degree of risk," of which the defendant is aware—yet the defendant chooses to proceed "with conscious indifference . . . ." *Lee*, 70 S.W.3d at 785 (citations omitted). And even at the summary-judgment stage, the clear-and-convincing evidence standard applies to gross negligence claims. *Partida Aranda*, 2019 WL 2357528, at *3.

Defendants point out that "there is no evidence that [DBN] was aware of any recklessness" nor that it "acted in conscious disregard . . . ." Doc. 89, Defs.' Br., 22. In support, Defendants note that Defendant Shagdarsuren "was an experienced driver with a valid commercial driver's license . . . ." *Id.*

Plaintiff, in response, points to an expert's opinion that Defendant DBN's alleged failure to train Defendant Shagdarsuren was grossly negligent. Doc. 96, Pl.'s Resp., 18 (citing Doc. 97-1, Pl.'s App., 396–405) (Stopper Aff.)). But Plaintiff's conclusory expert opinion, standing alone, does not overcome the clear-and-convincing burden he faces to establish an extreme degree of risk. Further, although Plaintiff has pointed to Defendant DBN's lack of training, see Doc. 96, Pl.'s Resp., 18, such evidence, at best, suggests simple negligence. *Accord Ruelas*, 2019 WL 4060891, at *8. Thus, Plaintiff has failed to create a genuine dispute of material fact regarding an extreme degree of risk inherent in Defendant DBN's lack of training. As a result, the Court **GRANTS** summary judgment on Plaintiff's the grossly negligent training claim.

# V.

## CONCLUSION

For the reasons stated, the Court **DENIES** summary judgment on Plaintiff's negligent training claim, but the Court **GRANTS** summary judgment on Plaintiff's claims of: gross negligence based on Defendant Shagdarsuren's conduct; negligent and grossly negligent entrustment, hiring, retention, and supervision; and grossly negligent training.

SO ORDERED.

SIGNED: January 14, 2020.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE